### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
WAYNE M.                     :    Civ. No. 3:20CV00465(SALM)
                             :
v.                           :
                             :
ANDREW M. SAUL,              :
COMMISSIONER, SOCIAL         :
SECURITY ADMINISTRATION      :    April 14, 2021
                             :
-----------------------------x
```

### <u>RULING ON CROSS MOTIONS</u>

Plaintiff Wayne M. ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff moves for an order reversing or remanding the Commissioner's decision. [Doc. #20]. Defendant has filed a cross-motion seeking an order affirming the decision of the Commissioner [Doc. #26].

For the reasons set forth below, plaintiff's Motion for Order **[Doc. #20]** is **GRANTED**, to the extent plaintiff seeks a remand for further administrative proceedings, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #26]** is **DENIED**.

## I. __PROCEDURAL HISTORY__[1]

Plaintiff filed concurrent applications for SSI and DIB on April 30, 2013, alleging disability beginning March 7, 2012. See Certified Transcript of the Administrative Record, Doc. #18, compiled on August 28, 2020, (hereinafter "Tr.") at 252-67.[2] Plaintiff's applications were denied initially on July 12, 2013, see Tr. 156-63, and upon reconsideration on November 21, 2013. See Tr. 165-72.

On December 15, 2014, plaintiff, represented by Attorney Ralph Wilson, appeared and testified at a hearing before Administrative Law Judge ("ALJ") I.K. Harrington. See generally Tr. 35-77. Vocational Expert Richard Hall testified by telephone at the December 15, 2014, administrative hearing. See Tr. 60-62, Tr. 71-75. On March 26, 2015, the ALJ issued an unfavorable decision. See Tr. 7-34.[3] On November 29, 2016, the Appeals

---

[1] Plaintiff filed a Statement of Material Facts with his motion and supporting memorandum, see Doc. #20-2, to which defendant filed a Responsive Statement of Facts, see Doc. #26-2.

[2] Plaintiff previously filed applications for DIB and SSI on March 19, 2012, alleging disability beginning on March 6, 2012. See Tr. 239-51. Those applications were denied on May 11, 2012. See Tr. 79, Tr. 346. It does not appear that plaintiff sought reconsideration of that denial. See Tr. 346.

[3] Attorney Meryl Anne Spat began representing plaintiff at the administrative level in May 2015. See Tr. 6.

Council denied plaintiff's request for review of the ALJ's decision. See Tr. 1-6.

On December 30, 2016, plaintiff, then representing himself, filed a complaint in the United States District Court for the District of Connecticut seeking review of the ALJ's 2015 decision. See Tr. 1469-77; see also Wayne M. v. Colvin, No. 3:16CV02135(DJS) (D. Conn. Dec. 30, 2016). On September 8, 2017, Judge Dominic J. Squatrito ordered the appointment of pro bono counsel for plaintiff. See Wayne M. v. Colvin, No. 3:16CV02135(DJS), Doc. #27 (D. Conn. Sept. 8, 2017). On October 6, 2017, the Clerk of the Court appointed Attorney Melissa A. Buckley as plaintiff's pro bono counsel. See id. at Doc. #28. On December 19, 2017, plaintiff filed a motion for judgment on the pleadings. See id. at Doc. #35. On February 14, 2018, the Commissioner filed a Motion to Affirm the Decision of the Commissioner. See id. at Doc. #36. On March 28, 2018, Judge Squatrito granted plaintiff's motion, in part, and judgment entered remanding the case to the Commissioner for further administrative proceedings. See id. at Docs. #27, #28; see also Tr. 1478-1508.

On August 3, 2018, the Appeals Council issued a Notice of Order of Appeals Council Remanding Case to Administrative Law

Judge. <u>See</u> Tr. 1509-14. The Appeals Council ordered, in relevant part:

> The claimant filed a subsequent claim for Title XVI disability benefits on November 16, 2017. The Appeals Council's action with respect to the current electronic claim renders the subsequent claim duplicate. Therefore, the Administrative Law Judge will consolidate the claims files, associate the evidence, and issue a new decision on the consolidated claims (20 CFR 416.1452 and HALLEX I-1-10-10). On remand, the Administrative Law Judge should apply the prior rules to the consolidated case pursuant to HALLEX I-5-3-30.

Tr. 1511; <u>see also</u> Tr. 1709-16 (subsequent application for SSI).

On May 8, 2019, the ALJ held a second administrative hearing, at which Attorney Spat appeared, but plaintiff did not. <u>See generally</u> Tr. 1415-34. Vocational Expert Susan Gaudet testified at the second administrative hearing by telephone. <u>See</u> Tr. 1422-33. On October 2, 2019, the ALJ held a third administrative hearing, at which plaintiff, represented by Attorney Spat, appeared and testified. <u>See</u> Tr. 1361-1403. Vocational Expert Jane A. Gerrish (the "VE" or "VE Gerrish") appeared and testified by telephone at the hearing. <u>See</u> Tr. 1403-13; <u>see also</u> Tr. 1812-13 (Gerrish resume). On January 21, 2020, the ALJ issued a second unfavorable decision (hereinafter the "2020 decision"). <u>See</u> Tr. 1322-59. Plaintiff did not file exceptions to the ALJ's 2020 decision, <u>see</u> Doc. #26-1 at 2, thereby making the 2020 decision the final decision of the

Commissioner.[4] The case is now ripe for review under 42 U.S.C.
§405(g).

## II.  <u>STANDARD OF REVIEW</u>

The review of a Social Security disability determination
involves two levels of inquiry. <u>First</u>, the Court must decide
whether the Commissioner applied the correct legal principles in
making the determination. <u>Second</u>, the Court must decide whether
the determination is supported by substantial evidence. <u>See</u>
<u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998) (citation
omitted). Substantial evidence is evidence that a reasonable
mind would accept as adequate to support a conclusion; it is
more than a "mere scintilla." <u>Richardson v. Perales</u>, 402 U.S.
389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305
U.S. 197, 229 (1938)). **The reviewing court's responsibility is
to ensure that a claim has been fairly evaluated by the ALJ.** <u>See</u>
<u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983) (emphasis
added).

The Court does not reach the second stage of review –
evaluating whether substantial evidence supports the ALJ's
conclusion – if the Court determines that the ALJ failed to

---

[4] Plaintiff asserts that he "filed an appeal, and the Appeals
Council denied relief, whereupon this civil action was filed."
Doc. #20-1 at 3. There is no record before the Court of a 2020
Appeals Council appeal or decision.

~ 5 ~

apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-

61 (2d Cir. 1988) (citing Carroll v. Sec. Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (citing Peoples v. Shalala, No. 92CV04113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4, 1994)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)).

Finally, some of the Regulations cited in this decision, particularly those applicable to the review of medical source evidence, were amended effective March 27, 2017. Those "new regulations apply only to claims filed on or after March 27, 2017." Smith v. Comm'r, 731 F. App'x 28, 30 n.1 (2d Cir. 2018) (summary order). Where a plaintiff's claim for benefits was

~ 7 ~

filed prior to March 27, 2017, "the Court reviews the ALJ's decision under the earlier regulations[.]" <u>Rodriguez v. Colvin</u>, No. 3:15CV01723(DFM), 2018 WL 4204436, at *4 n.6 (D. Conn. Sept. 4, 2018); <u>White v. Comm'r</u>, No. 17CV04524(JS), 2018 WL 4783974, at *4 n.4 (E.D.N.Y. Sept. 30, 2018) ("'While the Act was amended effective March 27, 2017, the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect.'" (citation omitted)); <u>see also</u> Tr. 1511 (Order of Appeals Council directing ALJ to apply "prior rules to the consolidated case").

## III. <u>SSA LEGAL STANDARD</u>

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that he is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his

previous work but cannot, considering his age, education, and
work experience, engage in any other kind of substantial gainful
work which exists in the national economy." 42 U.S.C.
§423(d)(2)(A); 20 C.F.R. §§404.1520(c), 416.920(c) (requiring
that the impairment "significantly limit[] ... physical or
mental ability to do basic work activities" to be considered
"severe").

There is a familiar five-step analysis used to determine if
a person is disabled. See 20 C.F.R. §§404.1520, 416.920. In the
Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is
> currently engaged in substantial gainful activity. If he
> is not, the Secretary next considers whether the
> claimant has a "severe impairment" which significantly
> limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment,
> the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed
> in Appendix 1 of the regulations. If the claimant has
> such an impairment, the Secretary will consider him
> disabled without considering vocational factors such as
> age, education, and work experience; the Secretary
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful
> activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per
curiam). If and only if the claimant does not have a listed
impairment, the Commissioner engages in the fourth and fifth
steps:

> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's

severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given his residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (alteration added); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam). The residual functional capacity ("RFC") is what a person is still capable of doing despite limitations resulting from his physical and mental impairments. See 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). "In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for

benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be broadly construed and liberally applied.'" Id. (quoting Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV.   **THE ALJ'S 2020 DECISION**

Following the above-described five-step evaluation process, the ALJ concluded that plaintiff had "not been under a disability, as defined in the Social Security Act, from March 7, 2012, through the date of" the ALJ's decision, January 21, 2020. Tr. 1348. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 7, 2012. See Tr. 1328. At step two, the ALJ found plaintiff had the severe impairments of "degenerative disc disease, degenerative joint disease, seizure disorder, major depressive disorder, general anxiety disorder, and substance abuse disorder[.]" Id. The ALJ found that plaintiff's "hepatitis C, hypertension, carpal tunnel syndrome, insomnia and sleep apnea are non-severe[]" impairments. Tr. 1329.

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1. See Tr. 1330-32. In making that determination, the ALJ specifically considered Listings 1.02

(major dysfunction of a joint), 1.04 (disorders of the spine),
11.02 (epilepsy – convulsive epilepsy (grand mal or
psychomotor)), 12.04 (affective disorders), and 12.06 (anxiety-
related disorders). See id.; see also Tr. 103 (description of
the mental health listings considered). Before moving on to step
four, the ALJ made two separate RFC findings. See Tr. 1332, Tr.
1342. The ALJ determined that **prior to April 28, 2017**, plaintiff
had the RFC

> to perform light work as defined in 20 CFR 404.1567(b)
> and 416.967(b). The claimant could sit for six hours as
> well as stand and walk 4 hours. The claimant could
> occasionally engage in pushing/pulling with the right
> lower extremity. He could occasionally engage in
> pushing/pulling with his left upper extremity (non-
> dominate side). He could occasionally balance stoop,
> kneel, crouch and crawl. He could occasionally climb
> ramps and stairs. He could occasionally climb ladders,
> ropes and scaffolds. He could occasionally engage in
> reaching with the left upper extremity (non-dominate).
> He should avoid all exposure to extreme cold, hazards,
> unprotected heights and dangerous moving machinery. The
> claimant could engage in simple routine tasks involving
> no more than simple, short instructions and simple work-
> related decisions with few work places changes in a non-
> public work setting with occasional interaction with co-
> workers and supervisors.

Tr. 1332 (sic) (hereinafter the "First RFC"). The ALJ next

determined that **beginning on April 28, 2017**, plaintiff had the

RFC

> to perform light work as defined in 20 CFR 404.1567(b)
> and 416.967(b). The claimant could lift and carry up to
> 10 pounds occasionally and 5 pounds frequently. He could
> occasionally climb ramps and stairs, ladders, ropes and
> scaffolding. He could occasionally balance stoop, kneel,

crouch and crawl. He could occasionally engage in overhead reaching with the left upper extremity (non-dominate side). He could have occasional exposure to hazards (unprotected heights, dangerous moving machinery). The claimant could perform simple routine task involving no more than simple, short instructions and simple work-related decisions with few work places changes in a non-public work setting with occasional interaction with co-workers and supervisors.

Tr. 1342 (sic) (hereinafter the "Second RFC").

At step four, the ALJ concluded that plaintiff was "unable to perform any past relevant work[.]" Tr. 1346. At step five, after considering plaintiff's "age, education, work experience, and" the separate RFC determinations, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform[.]" Tr. 1347.

## V.   <u>DISCUSSION</u>

Plaintiff asserts a number of ill-defined arguments in support of reversal or remand, the confusion of which is compounded by plaintiff's failure to differentiate between the ALJ's separate RFC determinations. The Court construes plaintiff's briefing as asserting the following categories of arguments: (1) the ALJ erred in the evaluation of the medical opinion evidence; (2) the ALJ erred in her assessment of plaintiff's subjective complaints; and (3) the step five determination is not supported by substantial evidence. <u>See generally</u> Doc. #20-1 at 3-20. Defendant generally responds that

~ 13 ~

substantial evidence supports the ALJ's RFC determinations and step five findings. See generally Doc. #26-1 at 4-15.

At the outset, the Court pauses to note the size of the record in this case -- almost 5,000 pages covering nearly eight years. In a record of that size, there could be substantial evidence to support either party's position. Importantly though, "whether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013).

A.  Evaluation of the Medical Opinion Evidence – Dr. Connolly

Plaintiff makes several arguments directed to the ALJ's assessment of the medical opinion evidence. First, plaintiff contends that the ALJ erroneously relied on the opinion of Dr. Joseph Connolly, a non-examining physician, because his opinion is not supported by substantial evidence. See Doc. #20-1 at 5-11.

On November 21, 2013, Dr. Connolly assessed plaintiff's physical RFC based on a review of records then before him. See generally Tr. 114-32 (Disability Determination Explanation

("DDE") for DIB claim); Tr. 133-51 (DDE for SSI claim).[5] In
pertinent part, Dr. Connolly found plaintiff was capable of:
occasionally lifting and/or carrying twenty pounds; frequently
lifting and/or carrying ten pounds; standing and/or walking for
a total of four hours; and sitting for a total of "about 6 hours
in an 8-hour workday[.]" Tr. 125. Dr. Connolly determined
plaintiff was "Limited in upper extremities[,]" on the left
side, including his ability to reach "Left in front and/or
laterally" and "Left Overhead[.]" Tr. 125-26 (sic). The ALJ
assigned "greater weight" to Dr. Connolly's opinion in support
of the First RFC determination. Tr. 1340.

   Plaintiff appears to assert that certain aspects of Dr.
Connolly's narrative explanation for his RFC determination,
specifically those related to plaintiff's shoulder impairment,
cervical spine, and sleep apnea, are not supported by
substantial evidence because Dr. Connolly did not "note[]" or
"mention" certain records from 2012 and 2013. Doc. #20-1 at 5.
Notably, plaintiff does not argue that Dr. Connolly did not
consider these documents, or that they were missing from the
record, but rather that he failed to "acknowledge" them in the
explanation supporting his opinion. Id. at 6. This aspect of

---

[5] The DDEs for plaintiff's DIB and SSI claims are identical. The
Court cites to only the DDE for plaintiff's DIB claim.

plaintiff's argument does not assert that Dr. Connolly relied on an incomplete record to formulate his opinion. Rather, it merely suggests that he did not specifically mention each medical record that was then before him. As is well settled, failure to mention a specific record does not mean that it was not considered. See, e.g., Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012).

Regardless, with respect to plaintiff's shoulder impairment and resulting reaching limitations, Dr. Connolly explicitly acknowledged plaintiff had "glenohumeral instability[]" and that plaintiff's left shoulder "dislocates on occasion." Tr. 127. Additionally, in 2014, following an arthroscopy of plaintiff's left shoulder, plaintiff reported that his left shoulder was then "doing well." Tr. 995, Tr. 1002. Accordingly, Dr. Connolly's opinion with respect to plaintiff's upper extremity limitations, for the period before April 28, 2017, is supported by substantial evidence.

Plaintiff next contends that Dr. Connolly erred by concluding "that Dr. Kime's exam showed no significant limitations in the cervical spine." Doc. #20-1 at 6 (emphasis removed). Plaintiff contends that characterization is not accurate in light of a February 12, 2013, examination by Dr. Kime stating: "Comfortable at rest, flexion -1, extension 40,

lateral 25, rotation 60. Intact upper extremity motor testing."
Tr. 393. Dr. Connolly's opinion does not cite to any specific
examination, see Tr. 127, and it is unclear why plaintiff
believes that Dr. Connolly was summarizing the February 12,
2013, record. Nevertheless, Dr. Connolly's opinion regarding
plaintiff's cervical spine is a fair characterization of the
evidence that was before him. For example, on January 23, 2012,
Dr. Arpad S. Fejos examined plaintiff's cervical spine, which
showed no significant limitations. See Tr. 383. Dr. Micha
Abeles's July 1, 2013, consultative examination states that
plaintiff "[s]hows pain on full rotation to the right. No other
complaints of cervical spine motion are elicited." Tr. 646.[6]
Objective evidence reviewed by Dr. Connolly also noted only mild
findings as to plaintiff's cervical spine. See Tr. 127; see also
Tr. 391 (February 14, 2011, MRI of plaintiff's cervical spine).
Accordingly, plaintiff's argument on this point is misplaced.

Next, plaintiff asserts that Dr. Connolly's opinion is
stale, because he did not review records from 2017, 2018, and
2019. See Doc. #20-1 at 6-9. As defendant contends, this
argument "appears based on a mistaken belief that the ALJ relied

---

[6] Physical examinations of plaintiff's cervical spine from 2014,
although not before Dr. Connolly, also generally reflect mild
findings. See, e.g., Tr. 997, Tr. 999, Tr. 1008; see also Tr.
1008 (June 12, 2014, Clinical Note: "X-rays five-view of the
cervical spine shows very mild degenerative changes.").

on Dr. Connolly's opinion to support an RFC for the entire relevant period through January 2020." Doc. #26-1 at 6. As previously noted, the ALJ relied on Dr. Connolly's opinion to support the First RFC determination, which applies to the period before April 28, 2017. See Tr. 1332, Tr. 1340.[7] The ALJ relied on an entirely different non-examining physician opinion to support the Second RFC determination. See Tr. 1345; see also Tr. 1516-28.

A medical opinion from a non-examining source may become stale when it is contradicted by subsequent medical evidence. See, e.g., Hidalgo v. Bowen, 822 F.2d 294, 295-96 (2d Cir. 1987). However, there is no "unqualified rule that a medical opinion is superseded by additional material in the record[.]" Camille v. Colvin, 652 F. App'x 25, 28 n.4 (2d Cir. 2016). Rather, for a medical opinion to become stale, and an ALJ to err

---

[7] Plaintiff asserts that Dr. Connolly did not have an opportunity to review the July 7, 2019, opinion of plaintiff's treating physician, Dr. Carl A. Leece. See Doc. #20-1 at 9. The opinion states that Dr. Leece had treated plaintiff since January 19, 2012. See Tr. 4890. The opinion also states that plaintiff has been "impaired" as described in the opinion, "since 3-7-12?" Tr. 4900 (sic). It is unclear whether Dr. Leece's opinion is retrospective such that it would apply to the time period encompassed by the First RFC determination. Accordingly, Dr. Leece's opinion does not necessarily raise doubts as to the reliability of Dr. Connolly's opinion. Additionally, for reasons that will be stated below, the ALJ appropriately assigned Dr. Leece's opinion minimal weight. See Tr. 1345.

by relying upon it, the subsequent medical evidence must "raise doubts as to the reliability of" the opinion. Id.

The evidence pointed to by plaintiff does not raise doubts as to the reliability of Dr. Connolly's opinion, because it post-dates April 28, 2017. See Doc. #20-1 at 7-8 (discussing records from 2018, June 2017 and November 2017). To reiterate, the ALJ relied on Dr. Connolly's opinion to support only the First RFC determination, which addressed the period prior to April 28, 2017.

Plaintiff also contends that Dr. Connolly's opinion does not accurately account for his sleep apnea. See Doc. #20-1 at 7-8. The Court does not agree. Dr. Connolly's opinion accurately summarizes the evidence relevant to the ALJ's First RFC determination. See, e.g., Tr. 587 (February 20, 2012, Sleep Study: "There is evidence for moderate obstructive sleep apnea[.]").[8] Although a 2015 sleep study found plaintiff to have

---

[8] To the extent plaintiff contends that his sleep apnea should have been designated a severe impairment at step two, a diagnosis alone is insufficient to establish severity. See, e.g., Crystler v. Astrue, 563 F. Supp. 2d 418, 440 (N.D.N.Y. 2008) ("[I]t is not the presence of such a medical condition, but rather its limitations, which inform the question of whether or not a plaintiff is under a disability." (footnote omitted)). Here, other than a string of hypothetical questions, plaintiff makes no argument suggesting how plaintiff's sleep apnea impacted his ability to function such that it should be considered a severe impairment. See Doc. #20-1 at 8. Nevertheless, the ALJ considered plaintiff's sleep apnea, insomnia, and his resulting fatigue throughout her analysis.

"[s]evere obstructive sleep apnea[,]" Tr. 3360, this record does
not raise doubts as to the reliability of Dr. Connolly's opinion
given the other evidence reporting that plaintiff reported
improvement in his sleep apnea when he was compliant with the
CPAP. See, e.g., Tr. 1847 (February 22, 2017, Progress Note: "He
is chronically non adherent to pap treatment."); Tr. 1850-31
(January 16, 2017, Progress Note: "The patients cpap usage shows
non compliance though apnea-hypopnea index shows his sleep
disordered breathing is controlled when he does utilize
prescribed treatment." (sic)). Indeed, at step two, the ALJ
found that plaintiff "has been chronically non adherent to pap
treatment[,]" despite reporting improvement when he was
compliant. Tr. 1329. Accordingly, there is no error on this
point.

Plaintiff presents two final arguments that are undeveloped
and unclear. First, plaintiff claims "the ALJ mistakenly and
arbitrarily substituted her own judgment for that of a competent
medical opinion by supposing what an expert might say if he were
presented with evidence." Doc. #20-1 at 10. Second, plaintiff
asserts that "[t]he Court does not have an adequate basis for

---

See, e.g., Tr. 1333, Tr. 1334, Tr. 1337, Tr. 1346. Accordingly,
any error at step two as to plaintiff's sleep apnea would be
harmless. See O'Connell v. Colvin, 558 F. App'x 63, 65 (2d Cir.
2014).

judicial review." Id. at 11. It is unclear to what plaintiff refers in making these arguments, and they are so undeveloped and vague that the Court declines to consider them.

Accordingly, for the reasons stated, Dr. Connolly's opinion, which the ALJ used to support the First RFC determination, is supported by substantial evidence.

B.   Evaluation of the Medical Opinion Evidence – Treating Physician Opinions

Plaintiff next asserts that the ALJ erred in her evaluation of the treating physician opinions. See generally Doc. #20-1 at 12-15. Plaintiff also asserts that the ALJ failed to provide good reasons for discounting the opinions of his treating physicians, Dr. Jeffrey A. Bash and Dr. Leece. See id. at 15-17. Defendant argues that the ALJ correctly weighed the medical opinion evidence. See generally Doc. #26-1 at 4-11.

1.   *Applicable Law*

"The SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant," Green-Younger, 335 F.3d at 106. According to this rule, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." 20 C.F.R. §404.1527(d)(2); see, e.g., Green-Younger, 335 F.3d at 106; Shaw, 221 F.3d at 134.

Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008); see also 20 C.F.R. §§404.1527(c), 416.927(c). If the opinion, however, is not "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques, then the opinion cannot be entitled to controlling weight. 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2).

> 2. *Crediting the Non-Examining Physicians Over the Treating Physicians*

Plaintiff asserts that the ALJ improperly "credited the DDS consultative professional over the records and opinions of Dr. Bash and Dr. Leece, treating physicians." Doc. #20-1 at 13.

"[T]he opinions even of non-examining sources may override treating sources' opinions and be given significant weight, so long as they are supported by sufficient medical evidence in the record." Correale-Englehart v. Astrue, 687 F. Supp. 2d 396, 427 (S.D.N.Y. 2010); see also Babcock v. Barnhart, 412 F. Supp. 2d 274, 280 (W.D.N.Y. 2006) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such their opinions may constitute substantial evidence if they are consistent with the record as a whole." (citation and quotation marks omitted)).

Plaintiff contends:

[T]he agency' consultant did not consider the evidence after 2013. Tr. 24, 114-151. The ALJ stated that subsequent evidence "does not contradict the findings of

the state agency medical consultants. Specifically this
opinion is consistent with the evidence of record after
April 28, 2017 and with the treating opinions contained
in the record at Exhibits 48F and 39F." Tr. at 1345.

Doc. #20-1 at 13 (sic). The Court construes this argument as

contending that the ALJ erred by crediting the 2013 opinion of

Dr. Connolly over the opinions of Dr. Bash and Dr. Leece. This

argument is misplaced and misstates the ALJ's decision for

several reasons.

First, the portion of the ALJ's decision quoted by

plaintiff above was made in connection with the ALJ's analysis

of the non-examining physician opinion from December 2017, which

the ALJ credited to support the Second RFC determination. See

Tr. 1345.[9] The ALJ did not rely on Dr. Connolly's opinion to

support the Second RFC determination. See generally Tr. 1332-41.

Second, the ALJ assigned "great weight" to the opinion of

Dr. Bash,[10] noting that his opinion is consistent with treatment

notes and other opinion evidence. Tr. 1341. The weight assigned

to Dr. Bash's opinion is consistent with, and not less than, the

weight assigned to the opinion of Dr. Connolly. See Tr. 1340.

---

[9] This opinion was issued in connection with plaintiff's
subsequent SSI application. See Tr. 1516-28.

[10] Dr. Bash stated, in records relevant to the First RFC
determination, that plaintiff was capable of light duty work.
See, e.g., Tr. 999.

Third, the ALJ considered Dr. Leece's opinion in connection with the Second RFC determination only. See Tr. 1340-41. Accordingly, the ALJ did not improperly credit the opinion of Dr. Connolly over the opinions of Dr. Bash and Dr. Leece.

Although not addressed by plaintiff, the Court nevertheless considers whether the ALJ erred by crediting the December 21, 2017, opinion of non-examining physician Dr. Michelle Holmes, over those of Dr. Bash and Dr. Leece. With respect to the opinion of Dr. Holmes, the ALJ stated:

> [T]he DDS consultative professional found the claimant capable of performing simple work at the sedentary level in a non-public setting. The undersigned gives substantial weight to this opinion for the period commencing April 28, 2017. ... [T]his opinion is consistent with the evidence of record after April 28, 2017 and with the treating opinions contained in the record at Exhibits 48F and 39F.

Tr. 1345.

As an initial matter, the ALJ did not credit the opinion of Dr. Holmes over Dr. Bash. The ALJ

> note[d] that the claimant's treating orthopedist, Dr. Bash, has opined that he cannot lift greater than five to ten pounds at various junctures in the record beginning in April 2017 at Exhibits 39F and 48F. The undersigned finds Dr. Bash's opinion probative for the period commencing April 28, 2017 as he is an orthopedic specialist and such an opinion is consistent with his treatment notes. The undersigned further notes that the opinion for a reduced lifting capacity was made at the initial level of review (Exhibit 16A).

Id. This finding is supported by the record. On approximately five occasions between late 2017 and July 2018, Dr. Bash restricted plaintiff to "no lifting greater than 5-10 pounds[.]" Tr. 4323; see also Tr. 1835, Tr. 1837, Tr. 4337, Tr. 4338. Dr. Bash otherwise did not opine on plaintiff's limitations as applicable to the Second RFC determination.

Plaintiff appears to suggest that the limits placed on plaintiff's ability to lift by Dr. Holmes are not supported by substantial evidence. See Doc. #20-1 at 14. In support of this argument, plaintiff cites to medical records noting the severity of plaintiff's neck impairment prior to plaintiff's cervical fusion. See id. (citing, in pertinent part, Tr. 4323, Tr. 4659, Tr. 4660). However, following that surgery, plaintiff reported that "[h]is preoperative radicular symptoms have completely resolved." Tr. 4313; see also Tr. 4315 ("He reports his preoperative pain has completely resolved. He does have some left trapezius spasm and discomfort. He is actively participating in physical therapy. He reports this helps him."); Tr. 4317 (Plaintiff "states that he is doing really well with a little bit spasming. Overall, he is happy with his outcome."); Tr. 4321 (Plaintiff "is thrilled with the results of his surgery. He reports complete resolution of his upper extremity

radiculopathy.").[11] Accordingly, substantial evidence supports this aspect of Dr. Holmes's opinion.[12]

Turning next to Dr. Leece, he completed a physical medical source statement sometime in 2019. See Tr. 4890-4900. The statement is not signed or dated. See Tr. 4900. In pertinent part, Dr. Leece, who treated plaintiff from 2012 to 2019, opined that plaintiff could never lift any weight and had other significant postural limitations. See generally Tr. 4890-4900. These opinions are contained in a form "drafted by the Law Office of Meryl Ann Spat" and are primarily noted in checkbox form. Tr. 4890.

The ALJ assigned Dr. Leece's opinion "minimal weight" because Dr. Leece's "assessment and proposed restrictions, if

---

[11] Plaintiff asserts that the ALJ erred by "pick[ing] out a few isolated instances of improvement ... as a basis for concluding" plaintiff is not disabled. Doc. #20-1 at 16. Plaintiff specifically takes issue with the ALJ noting that plaintiff's shoulder surgery was successful. See id. However, the record reflects that plaintiff's 2014 shoulder arthroscopy did at that time help to relieve his shoulder symptoms. See, e.g., Tr. 995 (September 26, 2014, treatment note: "Status post arthroscopy of left shoulder[,]" plaintiff reported that "[h]is left shoulder is doing well."); Tr. 1002 (July 28, 2014, treatment note: "Status post arthroscopy of left shoulder[,]" plaintiff reported that "[h]is left shoulder is doing well.").

[12] The ALJ also considered later records of Dr. Bash stating that plaintiff "was temporarily totally disabled." Tr. 1345. The ALJ appropriately discounted these statements, as "this issue is reserved for the Commissioner." Pope v. Barnhart, 57 F. App'x 897, 899 (2d Cir. 2003).

taken as true, would render the claimant bed bound and unable to do anything." Tr. 1345.[13] The ALJ continued: "The overall evidence of record does simply not support this level of limitation. ... This opinion is inconsistent with the opinion of plaintiff's treating orthopedist Dr. Bash[.] This form is a conclusory, checkbox format with minimal explanation of the clinical findings upon which it is based." Id. (sic).

The ALJ appropriately assigned Dr. Leece's opinion minimal weight. First, as noted by the ALJ, Dr. Leece's lifting restrictions are inconsistent with those of Dr. Bash. Compare Tr. 4896, with Tr. Tr. 4323. "Generally, the more consistent a medical opinion is with the record as a whole, the more weight" will be given to that opinion. 20 C.F.R. §§404.1527(c)(4), 416.927(c)(4).

Second, Dr. Leece's opinion is set forth on a checkbox form with little to no substantive explanation. A form comprised primarily of checkboxes "is only marginally useful for purposes of creating a meaningful and reviewable factual record." Halloran v. Barnhart, 362 F.3d 28, 31 n.2 (2d Cir. 2004) (per curiam). "The better an explanation a source provides for a medical opinion, the more weight [the Commissioner] will give

---

[13] The ALJ incorrectly refers to Dr. Leece as "Dr. Leach[.]" Tr. 1345.

that medical opinion." 20 C.F.R. §§404.1527(c)(3),
416.927(c)(3). Here, Dr. Leece did not provide a substantive
explanation for the functional limitations assessed, therefore
limiting the utility of his opinion.

Finally, it is unclear whether Dr. Leece's opinion is
retrospective, because it states that plaintiff's limitations
have been present since "3-7-12?" Tr. 4900 (sic). Regardless,
the limitations set forth in that opinion are inconsistent with
other evidence in the record. See, e.g., Tr. 894 (December 24,
2013, Treatment Note: Plaintiff "is able to walk consistently
for 1-3 hrs."); Tr. 1008 (June 12, 2014, Clinical Note
reflecting mild physical examination findings and noting that an
x-ray of plaintiff's "cervical spine shows very mild
degenerative changes."); Tr. 1883 (August 7, 2017, Progress
Note: Plaintiff reported he had been "doing some work on" his
house in Waterbury.); Tr. 1898 (June 19, 2017, examination by
Dr. Leece of plaintiff's back: "Weakly positive straight leg
raise on the right side. There is no weakness."); Tr. 1958-61 (A
March 19, 2018, "back pain consult" showed a normal inspection
of plaintiff's neck, normal balance, and normal gait.); Tr. 4469
(Plaintiff reported on April 24, 2018, that he "exercises
regularly[.]"). Accordingly, the ALJ's decision to assign Dr.

Leece's opinion minimal weight is supported by substantial evidence.

### 3.    Consideration of the Regulatory Factors

Plaintiff next asserts that the ALJ failed to consider each of the regulatory factors when weighing the opinions of Dr. Bash and Dr. Leece. See Doc. #20-1 at 15-16.[14]

When evaluating any opinion an ALJ is to consider the factors set out in 20 C.F.R. §404.1527(c) and §416.927(c). See Speilberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005). These factors include the: length of treatment relationship; frequency of examination; nature and extent of the treatment relationship; relevant evidence used to support the opinion; consistency of the opinion with the entire record; and expertise and specialized knowledge of the treating source. See 20 C.F.R. §§404.1527(c)(1)-(6), §§416.927(c)(1)-(6). The Second Circuit does not, however, require a "slavish recitation of each and every factor [of 20 C.F.R. §§404.1527(c), 416.927(c)] where the ALJ's reasoning and adherence to the regulation are clear."

---

[14] Plaintiff appears to contend that the ALJ failed to consider the treating relationship between plaintiff and Dr. Moeckel and Dr. Hergan. See Doc. #20-1 at 15-16. The record does not reflect any opinions authored by those providers. Plaintiff does not raise that fact as a point of error. Accordingly, the Court does not consider this aspect of plaintiff's argument.

Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (citing

Halloran, 362 F.3d at 31-32).

Plaintiff first contends that the ALJ did not consider the

length of his treatment relationship with Dr. Bash and Dr.

Leece. See Doc. #20-1 at 15. Although the ALJ did not explicitly

discuss the length of plaintiff's relationship with these

physicians, it is apparent from the ALJ's decision that she

considered the appropriate factors when deciding the weight to

assign these opinions. See, e.g., Cichocki v. Astrue, 534 F.

App'x 71, 76 (2d Cir. 2013) ("[R]emand is not required where

'the evidence of record permits us to glean the rationale of

an ALJ's decision[.]'" (quoting Mongeur v. Heckler, 722 F.2d

1033, 1040 (2d Cir. 1983))). First, the face of Dr. Leece's

opinion states that he treated plaintiff over 25 times between

2012 and 2019. See Tr. 4890. Second, the ALJ explicitly

considered records authored by Dr. Bash which span the relevant

time period. See, e.g., Tr. 1341 (ALJ's decision citing Exhibit

28F at p. 5 -- Dr. Bash's treatment note from 2014); Tr. 1342-43

(references to Dr. Bash's treatment notes spanning 2017 to

2019). Accordingly, the Court can glean from the ALJ's decision

that she considered the treatment relationship between plaintiff

and these two providers. See, e.g., Daniel v. Berryhill, No.

3:17CV01015(SALM), 2018 WL 2128380, at *6 (D. Conn. May 9, 2018)

(finding that the ALJ implicitly considered a treating physician's relationship with plaintiff where the ALJ "explicitly considered [the physician's] treatment notes throughout his decision[,]" and where the physician's opinion stated the date on which he first saw plaintiff).

Plaintiff next asserts: "The ALJ also ignored specialization." Doc. #20-1 at 16. Plaintiff specifically contends the ALJ ignored that "Dr. Bash was focusing on lifting limits imposed by the cervical ability[]" whereas Dr. Hergan was focused on lifting limits "imposed by a degenerated shoulder." Id. The Regulations provide that the Commissioner will "generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. §§404.1527(c)(5), 416.927(c)(5). Here, the ALJ explicitly considered that Dr. Bash is an orthopedic surgeon. See Tr. 1341. Plaintiff provides no authority for the position that the ALJ was required to consider anything more. Thus, the ALJ adequately considered Dr. Bash's specialization.

Accordingly, for the reasons stated, the ALJ did not err in her evaluation of the medical opinion evidence.

C.   The Credibility Determination

Plaintiff contends that the ALJ failed to properly evaluate his subjective complaints of pain. See Doc. #20-1 at 17-20. Defendant responds that the ALJ appropriately considered the regulatory factors to arrive at her assessment of plaintiff's credibility. See Doc. #26-1 at 6-8, 12-13.

1.   Applicable Law

Although "the subjective element of pain is an important factor to be considered in determining disability[,]" Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984) (citation omitted), an ALJ is not "required to credit [plaintiff's] testimony about the severity of her pain and the functional limitations it caused." Rivers v. Astrue, 280 F. App'x 20, 22 (2d Cir. 2008). "The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

"Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." Pietrunti v. Dir., Office of Workers' Comp. Programs, 119 F.3d 1035, 1042 (2d Cir. 1997) (quotation marks and citation omitted). The Regulations set forth a two-

step process that an ALJ must follow in evaluating a plaintiff's subjective complaints. First, the ALJ must determine whether the record demonstrates that plaintiff possesses a "medically determinable impairment that could reasonably be expected to produce [plaintiff's] symptoms, such as pain." 20 C.F.R. §§404.1529(b), 416.929(b). Second, the ALJ must assess the credibility of plaintiff's complaints regarding "the intensity and persistence of [plaintiff's] symptoms" to "determine how [the] symptoms limit [plaintiff's] capacity for work." 20 C.F.R. §§404.1529(c), 416.929(c).

In making this assessment, the ALJ should consider factors relevant to plaintiff's symptoms, "such as [his] daily activities, duration and frequency of pain, medication, and treatment." Jazina v. Berryhill, No. 3:16CV01470(JAM), 2017 WL 6453400, at *7 (D. Conn. Dec. 13, 2017); see also 20 C.F.R. §§404.1529(c)(3), 416.929(c)(3). The ALJ must consider all evidence in the case record. See SSR 16-3P, 2017 WL 5180304, at *8 (S.S.A. Oct. 25, 2017).

### 2.   Combination of Impairments

Plaintiff contends: "The ALJ gave no meaningful thought or consideration to the effect of the Plaintiff's combination of musculoskeletal impairments." Doc. #20-1 at 17.

"If the ALJ does find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process." Lena v. Astrue, No. 3:10CV00893(SRU), 2012 WL 171305, at *12 (D. Conn. Jan. 20, 2012) (citation and quotation marks omitted); see also 20 C.F.R. §§404.1523(c), 416.923(c).

The ALJ repeatedly described the requirement that she consider plaintiff's impairments singly and in combination. See Tr. 1326-27. The ALJ determined that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" Tr. 1330. The ALJ also stated that she considered "all symptoms[.]" Tr. 1332. Accordingly, the ALJ did not fail to assess plaintiff's impairments in combination. See, e.g., Lena, 2012 WL 171305, at *12 (finding ALJ properly assessed plaintiff's impairments in combination under similar facts).

As part of this argument, plaintiff also contends that the ALJ failed to "mention" certain evidence. Doc. #20-1 at 17. However, it is well settled that "an ALJ is not required to discuss every piece of evidence submitted[,]" and the ALJ's "failure to cite to specific evidence does not indicate that such evidence was not considered." Brault, 683 F.3d at 448 (citation and quotation marks omitted).

Plaintiff also argues that, in spite of the record containing evidence of "gait impairment," the ALJ "repeated three times that the Plaintiff's gait was normal." Doc. #20-1 at 17. Plaintiff is correct that the record contains references to plaintiff's impaired gait. See, e.g., Tr. 412, Tr. 416, Tr. 851, Tr. 4323. However, there are also many references to plaintiff's normal gait. See, e.g., Tr. 419, Tr. 646, Tr. 1022, Tr. 1841, Tr. 1960, Tr. 2566. "Although plaintiff may disagree with the ALJ's characterization of the evidence, genuine conflicts in the medical evidence are for the Commissioner to resolve." Dudley v. Berryhill, No. 3:16CV00513(SALM), 2018 WL 1255004, at *8 (D. Conn. Mar. 12, 2018) (citation and quotation marks omitted). Essentially, plaintiff seeks a reweighing of the evidence in his favor. The Court's role, however, "is not to decide the facts anew, nor to reweigh the facts, nor to substitute its judgment for the judgment of the ALJ. Rather, the decision of the ALJ must be affirmed if it is based upon substantial evidence even if the evidence would also support a decision for the plaintiff." Bellamy v. Apfel, 110 F. Supp. 2d 81, 87 (D. Conn. 2000). Indeed, "[t]he fact that [plaintiff] does not agree with [the ALJ's] findings, does not show that the ALJ failed to comply with the applicable standards." Lena, 2012 WL 171305, at *12.

Accordingly, the ALJ did not err in her consideration of plaintiff's combined impairments.

### 3.   *Conservative Treatment*

Plaintiff next asserts that the ALJ erred in her credibility assessment by finding plaintiff's treatment "conservative" but "not explain[ing] what more aggressive treatment Plaintiff should have pursued[.]" Doc. #20-1 at 18.

As part of her credibility determination, the ALJ stated that plaintiff's "treatment been essentially routine and/or conservative in nature." Tr. 1336 (sic). The Court disagrees with this characterization. The record is replete with evidence of plaintiff's extensive treatment, which has included: pain management; physical therapy; injections at multiple sites; and two surgical interventions. See, e.g., Jazina, 2017 WL 6453400, at *6 ("[P]laintiff's treatment regimen — which included powerful prescription opioids like oxycodone as well as other prescription drugs, and in the past included physical therapy and injections — does not appear to qualify as conservative[.]").

This error, however, is harmless given the many other reasons the ALJ provided for discounting plaintiff's credibility. "While conservative treatment alone is not grounds for an adverse credibility finding, the ALJ may take it into

account along with other factors." <u>Rivera v. Comm'r of Soc.</u>
<u>Sec.</u>, 368 F. Supp. 3d 626, 646 (S.D.N.Y. 2019), <u>appeal</u>
<u>dismissed</u> (May 31, 2019). Here, in addition to considering
plaintiff's purported conservative treatment, the ALJ also
considered: the objective medical evidence; plaintiff's failure
to comply with prescribed medication and other treatment
regimens; the inconsistency of plaintiff's statements; and
plaintiff's activities of daily living. <u>See</u> Tr. 1338-39.
Plaintiff does not challenge these aspects of the ALJ's
credibility findings. Accordingly, the ALJ's classification of
plaintiff's treatment as conservative in nature does not
constitute reversible error. <u>See</u> <u>Johnson</u>, 817 F.2d at 986
("[W]here application of the correct legal principles to the
record could lead to only one conclusion, there is no need to
require agency reconsideration.").

       4.   *Medical Evidence*

     Plaintiff contends that in making the credibility
determination the ALJ erroneously "concluded that medical
evidence of record does not demonstrate significant limited
range of motion, muscle spasms, muscle atrophy, motor weakness,
sensory loss, or reflex abnormalities associated with intense
and disabling pain." Doc. #20-1 at 19 (citing Tr. 1336). Again,
however, plaintiff essentially requests that the Court re-weigh

the evidence in his favor. For reasons previously stated, this is not the Court's role here.

Plaintiff also conclusorily asserts: "Attention and concentration problems due to pain should have been meaningfully discussed." Doc. #20-1 at 19. Plaintiff does not develop this argument in such a way that the Court may address it. Nevertheless, in both the First and Second RFC determinations, the ALJ limited plaintiff to "simple routine tasks involving no more than simple, short instructions and simple work-related decisions with few work places changes[.]" Tr. 1332, Tr. 1342 (sic). Plaintiff does not explain how these limitations fail to adequately account for any alleged deficiencies in plaintiff's attention and concentration. Accordingly, there is no error on this point.

D.   Step Five

Plaintiff appears to assert two separate arguments related to the ALJ's step five determination. First, plaintiff contends that the ALJ failed to include all of plaintiff's reaching limitations in the hypotheticals posed to VE Gerrish. See Doc. #20-1 at 3-4. Second, plaintiff asserts that there is an unresolved conflict between VE Gerrish's testimony and the Dictionary of Occupational Titles ("DOT") because VE Gerrish "did not explain her conclusion that a person with" plaintiff's

reaching limitations "could perform the jobs recited." Id. at
11-12. Defendant responds that substantial evidence supports the
ALJ's step five findings. See generally Doc. #26-1 at 14-15.

1. *Applicable Law*

At step five, the ALJ considers a plaintiff's RFC and his
or her "age, education, and work experience to see if
[plaintiff] can make an adjustment to other work." 20 C.F.R.
§§404.1520(a)(4)(v), 416.920(a)(4)(v). "At step five the burden
shifts to the Commissioner to show there is other gainful work
in the national economy which the claimant could perform." Butts
v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004), as amended on
reh'g in part, 416 F.3d 101 (2005) (citation and quotation marks
omitted). The "ALJ may make this determination either by
applying the Medical Vocational Guidelines or by adducing
testimony of a vocational expert." McIntyre v. Colvin, 758 F.3d
146, 151 (2d Cir. 2014).

2. *VE Gerrish Testimony and Vocational Interrogatories*

Following remand, the ALJ held a new administrative hearing
on October 2, 2019, at which VE Gerrish testified by telephone.
See Tr. 1396-1408, 1410-12. After some preliminary testimony
concerning plaintiff's past relevant work, the ALJ presented the
VE with a hypothetical about an "imaginary individual[,]" Tr.
1403, which largely tracked the limitations contained in the

First RFC determination, except for reaching, as to which the individual was limited to only "occasional overhead reaching with the left upper extremity, non-dominant side[.]" Tr. 1404 (sic). VE Gerrish testified that the hypothetical individual could perform the following jobs: (1) a linen grader, DOT code 361.687-022, classified as light, with approximately 15,000 jobs nationally; (2) an assembler, DOT code 706.687-010, classified as light, with approximately 20,000 jobs nationally; and (3) bakery worker, conveyor line, DOT code 524.687-022, classified as light, with approximately 8,000 jobs nationally. See Tr. 1404-05. Following this testimony, the ALJ and VE Gerrish engaged in the following colloquy:

> Q: Is your testimony consistent with the Dot and companion, SCO?
>
> A: Yes.
>
> Q: And, does the DOT and SCO, does it distinguish between reaching and use of unilateral use of arms, wearing of a knee brace –
>
> A: No.
>
> ...
>
> Q: What is, then, that portion of your testimony based on?
>
> A: It's based on my experience in job placement.
>
> Q: Okay, and what is the length of your experience?
>
> A: It's 30 years.

Tr. 1405 (sic).

The ALJ then inquired of the availability of jobs for a second hypothetical individual, who had the same limitations as identified in the first hypothetical, but required the use of a cane. See Tr. 1405-06. VE Gerrish testified that the following sedentary jobs would be available: (1) dowel inspector, DOT code 669.687-014, with approximately 800 jobs available nationally; (2) final assembler, DOT code 713.687-018, with approximately 6,000 jobs available nationally; and (3) addresser, DOT code 209.587-010, with approximately 500 jobs available nationally. See Tr. 1406. Following this testimony, the ALJ again inquired if the VE's testimony was consistent with the DOT and SCO, to which VE Gerrish responded: "Yes." Id.

On November 13, 2019, VE Gerrish completed a Vocational Interrogatory form. See Tr. 1826-29. The form presented for the VE's consideration

> a hypothetical individual [with the same age and educational background as plaintiff]. Assume further that this individual has the [RFC] to perform sedentary work ... except lift and carry up to 10 pounds occasionally, and 5 pounds frequently, occasionally climb ramps & stairs, climb ladders, ropes/scaffolding, balance, stoop, kneel, crouch crawl, occasional overhead reaching left upper extremity (non-dominate side), occasional exposure to hazards ... simple routine task involving no more than simple, short instructions & simple work-related decisions with few work places changes, non-public work setting, and occasional interaction with co-workers and supervisors.

Tr. 1827 (sic). VE Gerrish responded that this hypothetical
individual could perform the same jobs as those she testified to
at the administrative hearing, namely: final assembler; dowel
inspector; and addresser. See Tr. 1828. The last interrogatory
inquires: "Are there any conflicts between the occupational
evidence you have provided ... and the occupational information
contained in the DOT and/or the SCO?" Tr. 1829. VE Gerrish
responded: "No[.]" Id.

### 3.   Analysis – Incomplete Hypothetical

Plaintiff first asserts that the ALJ erred by failing to
include all of plaintiff's reaching limitations (i.e., front,
laterally, and overhead) as found by Dr. Connolly, in the
hypothetical questions presented to VE Gerrish. See Doc. #20-1
at 3.

One aspect of plaintiff's argument relates to the ALJ's RFC
determinations. See id. at 4. Specifically, plaintiff asserts
that "[t]he ALJ's failure to explain reasons for excluding
Plaintiff's [reaching] limitations from the RFC amounts to
error." Doc. #20-1 at 4. Plaintiff continues: "In modifying Dr.
Connolly's reaching limitations, the ALJ appears to have
substituted her judgment for the competent medical opinion of
Dr. Connolly ..., despite the fact that she assigned great
weight to Dr. Connolly's opinion." Id. (sic). Plaintiff's

argument is again premised on the mistaken belief that there is only one RFC determination. To the contrary, the ALJ assigned great weight to Dr. Connolly's opinion in support of the <u>First RFC determination</u>. <u>See</u> 1342. The First RFC determination incorporates the reaching restrictions found by Dr. Connolly because it limits plaintiff to "occasionally ... reaching in the left upper extremity (non-dominate)." Tr. 1332. This sufficiently accounts for Dr. Connolly's opinion "because a 1985 Social Security Program Policy Statement defines 'reaching' as 'extending the hands and arms <u>in any direction</u>[.]'" <u>Lockwood v. Comm'r of Soc. Sec. Admin.</u>, 914 F.3d 87, 92 (2d Cir. 2019) (quoting SSR 85-15, 1985 WL 56857, at *1 (S.S.A. Jan. 1, 1985)); <u>accord</u> <u>Martin v. Saul</u>, No. 3:18CV00914(SALM), 2019 WL 3852580, at *7 (D. Conn. Aug. 16, 2019) (same).[15]

Nevertheless, plaintiff is correct, and defendant concedes, that the ALJ did not provide a limitation for occasional front and lateral reaching with the left upper extremity in her hypothetical questions to VE Gerrish. <u>See</u> Doc. #20-1 at 3.

_____

[15] By contrast, the Second RFC determination restricts plaintiff to occasional <u>overhead</u> reaching, left upper extremity. <u>Compare</u> Tr. 1332, <u>with</u> Tr. 1342. As previously addressed, the ALJ supported the Second RFC determination with the opinion of Dr. Holmes, who found plaintiff limited in left <u>overhead</u> reaching. <u>See</u> Tr. 1523. The Court addresses the step five findings as to the Second RFC below.

Defendant contends that any such error is harmless, however, because VE Gerrish identified at least one job that accounts for occasional reaching -- that of a bakery worker, conveyor line. See Doc. #26-1 at 15; see also Tr. 1404.[16] The ALJ adopted this finding, and determined that an individual with the First RFC would be able to perform the requirements of a bakery worker, conveyor line. See Tr. 1347.

Defendant is correct that "[t]he Commissioner need show only one job existing in the national economy that [plaintiff] can perform." Bavaro v. Astrue, 413 F. App'x 382, 384 (2d Cir. 2011); see also Doc. #26-1 at 15. However, that one job must exist in significant numbers in the national or regional economy to support the ALJ's step five finding. See Sullivan v. Astrue, No. 08CV00635(CJS), 2009 WL 1347035, at *15 n.15 (W.D.N.Y. May 13, 2009) ("Even if the VE had identified only one job that existed in sufficient numbers, the Commissioner would have met his burden at the fifth step."). Accordingly, the Court next considers whether 8,000 jobs existing in the national economy is "significant."

---

[16] The other two jobs identified by VE Gerrish, and adopted by the ALJ each call for frequent reaching. See DOT 361.687-022 Linen Grader, 1991 WL 672993 (G.P.O. 1991); DOT 706.687-010 Assembler, Production, 1991 WL 679074 (G.P.O. 1991). This directly conflicts with the ALJ's First RFC determination, which limits plaintiff to occasional reaching. See Tr. 1332.

"Neither the Social Security Act, nor the Commissioner's Regulations or Rulings provide a definition for a 'significant' number of jobs." <u>Koutrakos v. Colvin</u>, No. 3:13CV01290(JGM), 2015 WL 1190100, at *21 (D. Conn. Mar. 16, 2015). "While there is no bright-line rule, courts have generally held that what constitutes a 'significant' number is fairly minimal, and numbers in the range of 10,000 jobs nationally have typically been found to be sufficiently 'significant' to meet the Commissioner's burden." <u>Sanchez v. Berryhill</u>, 336 F. Supp. 3d 174, 177 (W.D.N.Y. 2018) (citations and quotation marks omitted); <u>see also</u> <u>Hamilton v. Comm'r of Soc. Sec.</u>, 105 F. Supp. 3d 223, 231 (N.D.N.Y. 2015) ("[N]umbers of jobs in the ballpark of 10,000 to 11,000 nationwide have been held 'significant.'" (citation omitted)).

Defendant obliquely suggests that "thousands" of jobs in the national economy constitute a significant number. <u>See</u> Doc. #26-1 at 15. Plaintiff relies on the case of <u>Doran v. Comm'r of Soc. Sec.</u>, 467 F. App'x 446, 449 (6th Cir. 2012), in support of that assertion. The jobs at issue in <u>Doran</u> were that of a "security guard and parking lot attendant[.]" <u>Doran</u>, 467 F. App'x at 449. Those jobs are much more widely available that of the bakery worker identified here. <u>See, e.g.</u>, <u>Ray v. Colvin</u>, No. 4:16CV00389(REB), 2018 WL 1583138, at *11 (D. Idaho Mar. 30,

2018) ("[T]he vocational expert stated that there are at least 400,000 security guard jobs in the national economy."); Selzer v. Colvin, No. 1:16CV00276(BYP), 2017 WL 405246, at *4 (N.D. Ohio Jan. 31, 2017) (A vocational expert testified that there were "126,000 parking lot attendant jobs nationally[.]"). Defendant's argument is not persuasive on this point.

Some courts have concluded that 8,000 jobs in the national economy is not a significant number. See, e.g., Kathy H. v. Comm'r of Soc. Sec., No. 5:19CV00684(ATB), 2020 WL 3960846, at *16 (N.D.N.Y. July 13, 2020) ("8,991 jobs in the national economy are not sufficient jobs to sustain the Commissioner's burden at step five[.]"); Brandie K. A. v. Saul, No. ED19CV01017(RAO), 2020 WL 2572461, at *5 (C.D. Cal. May 21, 2020) ("[T]he number of addresser jobs in the national economy that the VE identified, 8,622, does not constitute a significant number of jobs."); Paul B. v. Comm'r of Soc. Sec., No. 3:18CV05218(BHS)(TLF), 2019 WL 2013835, at *3 (W.D. Wash. Apr. 16, 2019) ("8,000 is not a significant number of jobs nationwide."), report and recommendation adopted, 2019 WL 2005801 (May 6, 2019); Peach v. Berryhill, No. 1:17CV00201(MAT), 2018 WL 4140613, at *3 (W.D.N.Y. Aug. 30, 2018) ("[C]ourts in this Circuit have indicated that numbers similar to the DOT numbers provided by the VE in this case (a total of 34 positions

locally and 8,991 positions nationally, with the most widely
available specific job cited having only 6,672 jobs available in
the national economy) would not qualify as 'significant.'");
Nelson v. Berryhill, No. 3:17CV00614(AJB)(KSC), 2018 WL 799162,
at *12 (S.D. Cal. Feb. 8, 2018), ("[T]he Court finds
that 8,200 jobs is not a significant number of jobs in the
national economy."), report and recommendation adopted,  2018 WL
1638222 (Apr. 5, 2018). Other courts have held that numbers
varying from 9,000 upwards are "significant." Hanson v. Comm'r
of Soc. Sec., No. 3:15CV00150(GTS)(WBC), 2016 WL 3960486, at *13
(N.D.N.Y. June 29, 2016), report and recommendation adopted sub
nom. Hanson v. Colvin, 2016 WL 3951150 (July 20, 2016).

Based on the foregoing authority, the Court is persuaded
that 8,000 jobs nationally does not constitute a significant
number, particularly where, as here, such numbers are not
accompanied by any regional or local availability. Defendant
fails to cite to any persuasive authority to the contrary.
Accordingly, the portion of the ALJ's step five finding that
applies the First RFC determination, see Tr. 1347, is not
supported by substantial evidence.

   4.   Analysis – Inconsistencies with the DOT

The Court construes plaintiff's next argument as contending
that the ALJ failed to resolve a conflict between the VE's

testimony and the DOT. See Doc. #20-1 at 11-12. Defendant
asserts that "the ALJ properly identified and resolved any
conflict in favor of the vocational expert's testimony." Doc.
#26-1 at 14.

As previously noted, VE Gerrish testified by interrogatory
that an individual with the restrictions in the Second RFC,
further limited to sedentary work, would be able to perform the
occupations of: final assembler; dowel inspector; and addresser.
See Tr. 1828.[17] VE Gerrish stated there are no conflicts between
her interrogatory response and the DOT/SCO. See Tr. 1829. It
appears that the ALJ also considered VE Gerrish's hearing
testimony to find that her testimony was consistent with the
DOT. See Tr. 1348.

The Social Security Administration ("SSA") "primarily
relies on the [DOT] ... for information about the requirements
of work in the national economy[,]" but it "may also use VEs ...
to resolve complex vocational issues." SSR 00-4P, 2000 WL
1898704, at *2 (SSA Dec. 4, 2000) (footnote omitted). However,

> evidence provided by a VE ... generally should be
> consistent with the occupational information supplied by
> the DOT. When there is an apparent unresolved conflict
> between VE ... evidence and the DOT, the adjudicator
> must elicit a reasonable explanation for the conflict
> before relying on the VE ... for evidence to support a

---

[17] A person limited to light work can also generally perform work
at the sedentary level. See 20 C.F.R. §§404.1567(b), 416.967(b).

determination or decision about whether the claimant is disabled.

Id. The Second Circuit has construed this to mean that "whenever the Commissioner intends to rely on a vocational expert's testimony, she must identify and inquire into all those areas where the expert's testimony seems to conflict with the [DOT]." Lockwood, 914 F.3d at 92 (citation and quotation marks omitted). Accordingly, before relying on the VE's testimony, the Commissioner must "obtain a reasonable explanation for any apparent — even if non-obvious — conflict between the [DOT] and a vocational expert's testimony." Id.; accord Daigle v. Saul, No. 3:19CV00724(JAM), 2020 WL 5793354, at *7–8 (D. Conn. Sept. 28, 2020) ("Where an expert's testimony seems to conflict with the Dictionary, even if this conflict is not obvious, the ALJ must engage in a meaningful investigatory effort to uncover apparent conflicts, beyond merely asking the vocational expert if there is one and then reconcile the conflicts so identified."); Woodard v. Comm'r of Soc. Sec., No. 18CV00414(MJR), 2019 WL 5092126, at *3 (W.D.N.Y. Oct. 11, 2019) ("[A] vocational expert's testimony cannot constitute substantial evidence if it contains an apparent or obvious conflict with the DOT. In that event, the ALJ has an affirmative obligation to identify and elicit a reasonable explanation for

the conflict before she can rely on the vocational expert's testimony.").

Each of the positions identified by VE Gerrish in response to the interrogatory, and adopted by the ALJ, require <u>frequent</u> reaching. <u>See</u> DOT 713.687-018 Final Assembler, 1991 WL 679271 (G.P.O. 1991); DOT 669.687-014 Dowel Inspector, 1991 WL 68074 (G.P.O. 1991); DOT 209.587-010 Addresser, 1991 WL 671797 (G.P.O. 1991). The Second RFC, however, limits plaintiff to <u>occasional</u> overhead reaching with the left upper extremity. <u>See</u> Tr. 1342.

As previously noted, "reaching includes overhead reaching." <u>Lockwood</u>, 914 F.3d at 92. Accordingly, "[t]estimony that a claimant with overhead reaching limitations is capable of performing a job that the [DOT] describes as requiring 'reaching,' then, creates at least an <u>apparent</u> conflict that triggers the Commissioner's duty to elicit an explanation that would justify crediting the testimony." <u>Id.</u> Indeed, in a case very similar to the one now before the Court, where the plaintiff was restricted to occasional overhead reaching with the left arm, the District Court determined:

> [T]here was at least a <u>possible</u> conflict between the DOT job descriptions and the VE's testimony: the VE opined that [plaintiff] could perform three jobs even though she could only occasionally reach overhead with her left arm, while the DOT states that those jobs demand frequent reaching, which is defined as extending the "arms" in "any direction." <u>Id.</u> at 92 (emphases added). Given the use of the plural "arms," "reaching" could be understood

to require the use of both arms. Or, perhaps it could be
construed more narrowly, as the Commissioner suggests.
In either case, the Lockwood court made clear that it is
the ALJ's responsibility, not this Court's, to tease out
such details. See id. at 93.

Marjanovic v. Comm'r of Soc. Sec., No. 19CV00246(FPG), 2020 WL
3445676, at *4 (W.D.N.Y. June 24, 2020).

Defendant does not argue there was no conflict or that the
ALJ did not have a duty to identify any such conflict. See Doc.
#26-1 at 14. Rather, defendant asserts that the ALJ "properly
identified and resolved any conflict in favor of the vocational
expert's testimony[]" by "acknowledging that the expert relied
on her professional experience in areas not covered by the
DOT[.]" Id. The Court in Lockwood expressly rejected this type
of reasoning:

> [W]e decline to follow the District Court in inferring
> that [the VE's] personal observations of the jobs about
> which she testified led her to conclude that those jobs
> do not entail overhead reaching. While [the VE's]
> observations may well explain the apparent discrepancy
> between her testimony and the [DOT], the fact remains
> that it is the Commissioner's responsibility to obtain
> a reasonable explanation for any such discrepancies, and
> not this Court's obligation to concoct one post hoc.

Lockwood, 914 F.3d at 93 n.4 (citations and quotation marks
omitted).[18]

_____

[18] Notably, defendant relies on a pre-Lockwood case in support of
his position. See Doc. #26-1 at 15 (citing Lind v. Astrue, 530
F. Supp. 2d 456, 463 (W.D.N.Y. 2008)).

Defendant ignores Second Circuit precedent requiring the ALJ to not only identify and inquire into any conflict, but to actually <u>resolve</u> any apparent conflict:

> In the end, the Commissioner failed to reconcile [the VE's] testimony that a person with an overhead reaching limitation can perform the three jobs at issue here with the [DOT's] indication that all three jobs require "reaching." [The VE's] testimony cannot, then, represent substantial evidence capable of demonstrating that Lockwood can successfully perform work in the national economy. It may well be that the apparent conflict between [the VE's] testimony and the [DOT] is susceptible to easy resolution — if, for example, the reaching involved in the three jobs at issue consists exclusively of lateral or downward reaching. **But it is not our role to speculate as to how or whether that conflict might have been resolved had the Commissioner carried out her responsibility to probe such matters**. Instead, we must reverse and remand for further proceedings so that the Commissioner may have the opportunity to conduct the requisite inquiry in the first instance.

<u>Lockwood</u>, 914 F.3d at 94 (emphasis added); <u>accord</u> <u>Marjanovic</u>, 2020 WL 3445676, at *4; <u>Martin</u>, 2019 WL 3852580, at *8.

Here, the ALJ cursorily inquired into the potential conflict between the VE's testimony and the DOT. <u>See</u> Tr. 1405-07. The ALJ's questioning and VE Gerrish's testimony are unclear and confusing. At most the colloquy appears to address the question of unilateral versus bilateral reaching. <u>See</u> <u>id.</u> It does not address the question of frequency. <u>See</u> <u>id.</u> Regardless, it is not the Court's duty to parse out such details; rather, that duty falls squarely on the ALJ. <u>See</u> <u>Marjanovic</u>, 2020 WL

3445676, at *4 ("[T]he Lockwood court made clear that it is the
ALJ's responsibility, not this Court's to tease out such
details."). Here, the ALJ failed to fulfill that duty.
Accordingly, "[w]here the ALJ does not fully discharge his duty
to resolve any apparent conflicts between the VE's testimony and
the DOT, remand is appropriate." Martin, 2019 WL 3852580, at *8.

Therefore, "[b]ecause the Commissioner's denial was based
on evidence that contained an apparent conflict with the [DOT's]
authoritative guidance, and [] the Commissioner failed to take"
adequate steps to resolve that conflict, remand is required so
that the Commissioner may "conduct the requisite inquiry in the
first instance." Lockwood, 914 F.3d at 94.[19]

E.   Remand for further Administrative Proceedings

Plaintiff "seeks reversal or remand of the decision." Doc.
#20-1 at 22. Given that plaintiff's original applications were
previously remanded, the Court construes plaintiff's request for
"reversal" as seeking a reversal of the Commissioner's decision
with a remand for a calculation of benefits.

---

[19] As applied to the Second RFC determination, the ALJ identified
a total of just 8,600 jobs in the national economy that
plaintiff can perform. See Tr. 1348. Although the Court does not
reach this issue, in light of its prior analysis, the Court has
concerns as to whether this would constitute a "significant
number."

"Sentence four of 42 U.S.C. §405(g) provides that, after reviewing the Commissioner's determination, a court may: 'enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'" Butts, 388 F.3d at 384 (quoting Sentence four of 42 U.S.C. §405(g)). "Reversal for payment of benefits is appropriate where the existing record contains persuasive proof of disability and a remand for further proceedings would serve no further purpose." Saxon v. Astrue, 781 F. Supp. 2d 92, 106 (N.D.N.Y. 2011) (citation and internal quotation marks omitted).

"The 'no purpose' remand[] ... is grounded in equitable considerations and is often deployed where prior administrative proceedings and litigation have consumed an inordinate length of time." Munford v. Apfel, No. 97CV05270(HB), 1998 WL 684836, at *2 (S.D.N.Y. Sept. 30, 1998). Plaintiff's original applications have been pending for quite some time -- nearly eight years -- and have already been the subject of one remand. See Tr. 252-67. Although "length of time is certainly a relevant factor in the determination of whether to remand for further proceedings or remand solely to calculate benefits[,]" Talanker v. Barnhart, 487 F. Supp. 2d 149, 160 (E.D.N.Y. 2007), it is not the only

factor the Court considers. Plaintiff makes no argument that he meets a listing or that further administrative proceedings would serve no purpose.

The Court is aware of authority suggesting that where the Commissioner fails to meet his burden at step five, a remand for calculation of benefits can be warranted. See, e.g., Torres v. Colvin, No. 3:16CV00809(JAM), 2017 WL 1734020, at *3-4 (D. Conn. May 3, 2017); accord Peach, 2018 WL 4140613, at *5. Here, however, the Court finds remand for further administrative proceedings appropriate so that the ALJ may present the VE with an accurate and complete hypothetical and conduct the requisite inquiry to resolve any conflicts between the VE's testimony and the DOT/SCO. See, e.g., Butts, 416 F.3d at 104 (holding that it was not an abuse of discretion to remand for further proceedings where Commissioner failed to meet her burden at step five); Lockwood, 914 F.3d at 94 (remanding for further administrative proceedings after finding error at step five).

Accordingly, this matter is hereby remanded for further administrative proceedings consistent with this Ruling. Finally, the Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand. Rather the Court finds remand is appropriate for further consideration of the step five findings, as discussed herein.

**VI.   <u>CONCLUSION</u>**

For the reasons stated, plaintiff's Motion for Order **[Doc. #20]** is **GRANTED,** to the extent plaintiff seeks a remand for further administrative proceedings, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #26]** is **DENIED.**

SO ORDERED at New Haven, Connecticut, this 14th day of April, 2021.

_____
        /s/
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE